UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J & J SPORTS PRODUCTIONS,
INC.,

       Plaintiff,                           Case No. 15-13042
                                                 Hon. Mark A. Goldsmith

vs.

THE HAPPY HOUR TAVERN,
LLC, et al.,

       Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST THE HAPPY HOUR TAVERN, LLC, AND TILSMAN DALE HOLBROOK (Dkt. 13)**

Plaintiff filed a lawsuit alleging that Defendants violated the Communications Act of 1934, as amended, 47 U.S.C. § 605, by stealing encrypted satellite television transmissions.[1] Defendants did not defend the lawsuit, and the Clerk of Court entered a default as to all Defendants on November 4, 2015 (Dkts. 11, 12). Plaintiff has now filed a motion for a default judgment (Dkt. 13) — a request for damages that the statute requires the Court to evaluate based on considerations of justice. See 47 U.S.C. § 605(e)(3)(C)(i)(ii) (statutory damages available "as the court considers just"). For the reasons that follow, Plaintiff's motion for default damages is granted in part. The requested award of $110,000 — the statutory maximum — shall be fixed instead at $9,437.88, inclusive of fees and costs.

---

[1] In the alternative, Plaintiff alleged that Defendants are liable under 47 U.S.C. § 553. However, because § 553 bans only the theft of programming from a cable system — as opposed to a satellite transmission system — a cause of action under § 553 was not available on the facts alleged. See Cablevision of Mich., Inc. v. Sports Palace, Inc., 27 F.3d 566 (Table), 1994 WL 245584, at *3 (6th Cir. June 6, 1994).

1

## I. BACKGROUND

Plaintiff J & J Sports Productions held the exclusive distribution rights to a Floyd Mayweather boxing match held on September 14, 2013 (the "Program"), which was broadcast nationwide as closed-circuit (encrypted) satellite television. Compl. ¶ 12. In other words, it was a pay-per-view event. Businesses of Defendants' size that wished to show the Program to their patrons were required to pay a commercial fee of $2,200. See Rate Card, Ex. 10 to Def. Mot. (Dkt. 13-10).

Plaintiff alleges that Defendants — a bar and its owner — intercepted the broadcast without paying for it and showed it to their customers. Compl. ¶ 4. Plaintiff discovered this through an independent auditor, who Plaintiff had hired to visit the bar to make sure that the Program was not being illegally exhibited. See Auditor's Report, Ex. 9 to Def. Mot. (Dkt. 13-9). The auditor's report, which is a sworn affidavit, claims that there were approximately 25 people in Happy Hour Tavern. Id. The auditor also claims that there were 10 television screens in the Tavern, with seven showing the boxing match. Id. The auditor further alleges that no cover was charged, and the bar did not visibly advertise that it was showing the boxing match. Id.

Plaintiff timely served Defendants (Dkts. 7, 8), but Defendants did not answer or otherwise respond to the complaint. Accordingly, Plaintiff requested and received a clerk's entry of default as to all Defendants (Dkts. 9-12). Plaintiff now moves for a default judgment.

## II. DISCUSSION

Once a default is entered against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Ford Motor Co. v. Cross, 441 F.Supp.2d 837, 846 (E.D. Mich. 2006) (citing Visioneering Constr. v. U.S. Fidelity &

2

Guaranty, 661 F.2d 119, 124 (6th Cir. 1981). Plaintiff has, therefore, established Defendants' liability for violating 47 U.S.C. § 605.

Allegations regarding damages, on the other hand, are not taken as conclusively established. See Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110 (6th Cir. 1995). An evidentiary hearing on damages is not a prerequisite to the entry of a default judgment if damages are contained in documentary evidence or detailed affidavits and can be ascertained on the record before the court. J & J Sports Prods., Inc. v. Lukes, No. 10-00535, 2010 WL 4105663, at *1 (N.D. Ohio Oct. 18, 2010); Fed. R. Civ. P. 55(b)(2).

A claimant who has established liability under § 605(a) may elect between actual or statutory damages under § 605(e)(3)(C)(i). Plaintiff here elects an award of statutory damages under § 605(e)(3)(C)(i)(II). See Def. Mot. at 7. In addition to the elected form of damages, § 605 provides for: (i) 'enhanced' damages for willful conduct, up to $100,000; and (ii) mandatory attorney fees. See 47 U.S.C. §§ 605(e)(3)(C)(ii); 605(e)(3)(B)(iii).

The amount of statutory damages to be awarded to Plaintiff is within the discretion of the Court. See id. § 605(e)(3)(C)(i)(II) ("as the court considers just"); Nat'l Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 917-918 (6th Cir. 2001). In calculating statutory damages, courts typically consider the price a defendant would have had to have paid to obtain the right to receive and display a broadcast, as well as the plaintiff's cost to police its broadcasting rights in the area. Joe Hand Promotions, Inc. v. Potopsky, No. 1:10-cv-1474, 2011 WL 2648610, at *4 (N.D. Ohio July 6, 2011).

Here, Plaintiff submitted evidence showing that Defendants should have paid $2,200 to show the Program. See Rate Card, Ex. 10 to Def. Mot. It further appears that Plaintiff's auditor, who visited the location and witnessed the statutory violations at issue, charged $250 for his

services. See Attorney Invoice at 4 (cm/ecf page) (Dkt. 13-11) ("Investigator Fee" incurred in September 2013). This represents statutory damages in the amount of $2,450.00.

The Court further finds that Plaintiff has demonstrated willful conduct on the part of Defendants. The Supreme Court has defined "willful" in the context of civil statutes as conduct showing "disregard for the governing statute and an indifference to its requirements." Transworld Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985); see also ON/TV of Chicago v. Julien, 763 F.2d 839, 844 (7th Cir. 1985) (applying Transworld Airlines to § 605 cases). The statute itself offers no further guidance on determining willfulness, but Buckeye Cablevision, Inc. v. Sledge, 3:03CV7561, 2004 WL 952875, at *2 (N.D. Ohio Apr. 8, 2004), surveys some approaches:

> For purposes of § 605, courts have identified conduct as "willful" where there were repeated violations over time, or there was a sophisticated understanding of the satellite programming industry and there was a violation of the statutes that regulate the conduct. Cable/Home Communication Corp. v. Network Prod., 902 F.2d 829, 851 (11th Cir. 1990); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D.Conn.1993).
>
> Other district courts have ruled that a court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. Time Warner Cable of New York City, 977 F. Supp. at 589; Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y.1983).

Based on these considerations, Defendants' conduct was willful. The record indicates that Defendants have a history of violating § 605, having had a default judgment awarded against them in January 2015 for nearly identical conduct. See generally Joe Hand Promotions, Inc. v. The Happy Hour Tavern, LLC, et al., No. 14-cv-11693 (E.D. Mich). On this basis alone, Defendants' violation of § 605 can hardly be attributed to happenstance. "Signals do not descramble spontaneously, nor do television sets connect themselves to [satellite] distribution

4

systems." Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999). Similarly, Defendants were apprised of the claims against them, including the willfulness charge, see Compl. ¶¶ 15-16, yet chose not to defend against them. A failure to defend has been considered evidence of willfulness, even within this Circuit. See, e.g., J & J Sports Prods., Inc. v. Tonita Restaurant, LLC, No. 5:13-cv-382, 2015 WL 9462975, at *4 (E.D. Ky. Dec. 28, 2015).

Willfulness is not the only criterion for 'enhanced' damages. Rather, § 605 provides that, not only must the infringement be willful, but it must be for purposes of direct or indirect commercial advantage or private financial gain. This criterion is easily satisfied here, where Defendants are a sports bar and its owner, who displayed the Program to approximately 25 customers on at least seven television screens. See Auditor's Report, Ex. 9 to Def. Mot. This obviously had, at the very least, an indirect commercial — rather than charitable or private — purpose. Indeed, displaying media like the Program is inherent to the concept of a "sports bar."[2]

Having concluded that Defendants willfully violated § 605 and that 'enhanced' damages are available, the Court determines that a just award requires trebling the amount of statutory damages, for a total of $7,350.00, inclusive of both statutory and enhanced damages. See Joe Hand Promotions, Inc. v. The Happy Hour Tavern, LLC, et al., No. 14-cv-11693 (E.D. Mich) (Dkt. 15) (trebling damages); Joe Hand Promotions, Inc. v. McBroom, No. 5:09-cv-276(CAR), 2009 WL 5031580, at *6 (M.D. Ga. Dec. 15, 2009) (same).

---

[2] This is true notwithstanding the fact that Defendants did not advertise that they were displaying the Program. While such advertisements would also conclusively establish a motive for commercial advantage or private financial gain, the display of the Program on seven screens is nevertheless calculated to induce customers to spend more time and, therefore, more money at the bar.

5

Finally, under § 605(e)(3)(B)(iii), the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Plaintiff submitted its attorneys' invoice, billing Plaintiff for 5.7 hours. See Ex. 11 to Def. Mot. (Dkt. 13-11). These hours were billed at hourly rates ranging between $215 and $235 — rates customarily charged in the region. See Ex. 12 to Def. Mot. (Dkt. 13-12) (State Bar of Michigan Billing Rate Summary Report). The Court deems this amount reasonable. See Potopsky, 2011 WL 2648610, at *4 (6 hours reasonable). Finally, the costs incurred by Plaintiff's counsel seem no more than necessary. See Ex. 11 to Def. Mot. (filing fee of $400; service of process for $150; witness/investigator fee of $250). Thus, pursuant to § 605(e)(3)(B)(iii), Plaintiff's request for fees and costs in the amount of $2,087.88 is granted.

### III.  CONCLUSION

Defendants are jointly and severally liable to Plaintiff in the amount of $9,437.88. A judgment will be issued.

SO ORDERED.

Dated:  April 11, 2016                                s/Mark A. Goldsmith
          Detroit, Michigan                           MARK A. GOLDSMITH
                                                      United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 11, 2016.

                                                      s/Karri Sandusky
                                                      Case Manager